UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

       Plaintiff,

v.

CONSUMERS ENERGY
COMPANY,

       Defendant.

_____/

Case No. 2:23-cv-11307
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 9)[1]

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

I.    Introduction

This is a civil case.  Plaintiff Peter Bormuth (Bormuth),[2] proceeding *pro se*, is suing defendant Consumers Energy Company (Consumers).  As best as can be gleaned from the complaint, Bormuth claims that Consumers has made financial contributions to non-profit organizations who have promoted candidates "bent on overthrowing the secular government of the United States" and in so doing has given "comfort and aid" to these "politicians wishing to place christian mortality on our government."  (ECF No. 1, PageID.7-8).  Bormuth asserts three claims against Consumers: "Treason;" "Equal Protection" under 42 U.S.C. § 1983; and "Conspiracy under 42 U.S.C. § 1985(3)."  (*Id.*, PageID.8-18).

Pretrial proceedings have been referred to the undersigned.  (ECF No. 7).  Before the Court is Consumer's motion to dismiss.  (ECF. No. 9).  The motion is fully briefed, (ECF Nos. 11, 14), and ready for determination.  For the reasons that

---

[2] Bormuth is a frequent *pro se* litigator in this district.  *See Bormuth v. Dahlem Conservatory*., No. 2:11-cv-11354 (E.D. Mich., Steeh, J) (case dismissed on motion to dismiss, affirmed on appeal); *Bormuth v. Jackson Cnty*., No. 2:12-cv-11235 (E.D. Mich., Cleland, J.) (motion practice left one claim against three defendants for trial, case settled before trial); *Bormuth v. Jackson Cnty*., No. 2:13-cv-13726 (E.D. Mich., Battani, J.) (case dismissed on motions for summary judgment, affirmed on appeal *en banc*); *Bormuth v. Johnson*, No. 2:16-cv-13166 (E.D. Mich., Edmunds, J.) (case dismissed on motion to dismiss, affirmed on appeal); *Bormuth v. Whitmer*, No. 2:20-cv-11399 (E.D. Mich., Goldsmith, J.) (case dismissed on Court's action after last operative complaint was dismissed, no appeal); *Bormuth v. City of Jackson*, No. 2:20-cv-11923 (E.D. Mich., Michelson, J.) (case remanded to state court).

2

follow, it is RECOMMENDED that the motion be GRANTED.  If this recommendation is adopted, Bormuth's case will be dismissed.

## II.    Background

### A.    The Complaint

As noted above, the complaint is difficult to decipher.  It appears that Bormuth is saying that Consumers has committed treason and violated federal law by making contributions to certain political organizations who support Republican candidates with Christian views for state legislative offices.  Bormuth says that Consumers' actions run contrary to the separation of church and state and deprive non-Christians, like himself, of rights secured by the constitution.

Turning to the allegations in the complaint, Bormuth "is a non-christian individual, a United States citizen, a Pagan Druid, and a resident of Jackson County."  (ECF No. 1, PageID.2 – Complaint at ¶ 1).  Consumers is a "combination electric and gas public utility organized and incorporated in the State of Michigan that serves consumers in broad sections of the State."  (*Id.* – Complaint at ¶ 2).  Its utility rates are set by the Michigan Public Service Commission.  (*Id.*, PageID.7 – Complaint at ¶ 28).  Consumers has made financial contributions to Citizens for Energizing Michigan's Economy (CEME), an Internal Revenue Code Section 501(c)(4) organization allegedly "headed by current or former executives" of Consumers.  (*Id.*, PageID.4-5 – Complaint at ¶¶ 12, 16).

3

In the 2020 election cycle, CEME allegedly "promoted" four Republican candidates: John Damoose (Damoose), Andrew Beeler (Beeler), Pat Outman (Outman), and Andrew Fink (Fink).  (*Id.*, PageID.5-6 – Complaint at ¶¶ 15, 16.2). "CMS Energy Employees for Better Government" also contributed $1,500 each to those four candidates.  (*Id.*, – Complaint at ¶ 15).  In advertisements and mailers, CEME allegedly touted Christian values in supporting the candidacies of Damoose and Fink.  (*Id.*, – Complaint at ¶¶ 17–18, 20).

Consumers and DTE Energy allegedly have political actions committees that have given money to 102 of 148 currently serving Michigan state legislators.  (*Id.*, PageID.6 – Complaint at ¶ 21).  In the six-year span of 2017–2022, Consumers' political action committee "donated $855,000 to lawmakers and legislative caucus funds."  (*Id.* – Complaint at ¶ 22).  On May 25, 2023, ten representatives in the Michigan House—not including Damoose, Beeler, Outman, or Fink—put forth Michigan House Bill 4672, "which would require all schools to offer instruction to students on the foundations of Christianity in the United States."  (*Id.*, – Complaint at ¶ 23).  One of those ten sponsors of the bill states on his Facebook page that he is a follower of Jesus and a conservative Republican and that before working for Newago County, he was a "Christian school administrator, teacher, missionary, and pastor."  (*Id.*, – Complaint at ¶ 24).

### III.    Legal Standards

4

Consumers moves to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Both grounds will be considered in turn.[3]

### A.    Rule 12(b)(1)

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 555, 562 (M.D. Tenn. 2020).  "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d. 752, 759 (6th Cir. 2014).  "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.*  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Id.*  Here, Consumers is making a facial attack.

---

[3] As Consumers notes, federal courts must address standing before any merits-based questions. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  Thus, where, as here, a defendant moves to dismiss under Rules 12(b)(1) and 12(b)(6), the court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

B.      Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Finally, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' "  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-7 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]' "  *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### IV.   Analysis

### A.   Standing

### 1.   General

Article III standing arises from the U.S. Constitution's "case or controversy" requirement.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To establish standing, a plaintiff must establish (1) actual or imminent injury in fact that is concrete and particularized; (2) a causal connection that establishes the plaintiff's injury is fairly traceable to the defendant's alleged conduct; and (3) that a favorable decision by the court is likely to redress the plaintiff's injury.  *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1 (1992)).  The plaintiff must "demonstrate standing separately for each form of relief sought" and "for each claim he seeks to press."  *DaimlerChrysler Corp. v.*

7

*Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 185 (2000)).  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* May 24, 2016.

### 2.    Discussion

The undersigned agrees with Consumer's assessment that Bormuth is basing standing on three grounds.  First, that a criminal statute–18 U.S.C. § 2382– "requires the Plaintiff to bring this claim."  (ECF No. 1, PageID.2).  Second, that Consumers' actions "personally threaten Plaintiff, a Pagan Druid by belief (Celtic/German/Jewish by ethnic background), with disenfranchisement of his civil rights."  (*Id.*, PageID.7).  And third, Consumers' actions "directly harm[] the Plaintiff and all ratepayers who are not Christian."  (*Id.*, PageID.7-8).  In his response, Bormuth says that additional injuries establish his standing.  All will be addressed.

First, 18 U.S.C. § 2382 is a federal criminal statute for misprision of treason. It provides as follows:

> Whoever, owing allegiance to the United States and having knowledge of the commission of any treason against them, conceals and does not, as soon as may be, disclose and make known the same to the President or to some judge of the United States, or to the governor or to some judge or justice of a particular State, is guilty of misprision of treason and shall be fined under this title or imprisoned not more than seven years, or both.

8

In his response, Bormuth concedes that this statute "does not confer standing on the Plaintiff for this civil action." (ECF No. 11, PageID.78). However, Bormuth argues that Count I should not be dismissed but only that the statute does not confer subject matter jurisdiction. (*Id.*). Bormuth instead urges the Court to appoint a special prosecutor to investigate his allegations of treason. For reasons explained further below, Count I fails to state a claim and for lack of standing.

Bormuth's second and third allegations regarding standing fare no better. In his second allegation of injury, he asserts that Consumers' actions "to overthrow the secular government of the United States and replace it with a government founded on Christian morals personally threatens" him as "a Pagan Druid by belief (Celtic/German/Jewish by ethnic background), with disenfranchisement of his civil rights." (ECF No. 1, PageID.7). Injury in fact is the "[f]irst and foremost" of the three elements of standing. *Steel Co*, 523 U.S. at 103. To establish such injury, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. For an injury to be concrete, it "must actually exist." *Spokeo*, 578 U.S. at 340 (citation omitted). For an injury to be "actual or imminent," the "threatened injury must be certainly impending"—"[a]llegations of possible future injury are not sufficient." *Clapper*

*v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) (citations omitted); *see also Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 545 (6th Cir. 2021) ("a yet-to-happen injury must be certainly impending to constitute injury in fact; the mere possibility that the injury will arise in the future does not suffice." (citations omitted)).

Here, Bormuth's allegations of harm are based on speculation and conjecture. They are also based on unknown and unspecified future actions of third parties. The complaint contains no allegation that any of the four Republican state legislators who have allegedly gotten support from CEME have ever called to overthrow the government, persecute non-Christians, or enact legislation to "disenfranchise" them from any civil rights.

Bormuth appears to contend that he has standing under this theory because of legislation that a Republican-majority Michigan legislature could pass in the future. He refers to "anti-abortion, anti-Gay & Trans, climate change denying laws being passed nationwide," he claims these "future harms [he] fears are virtually certain to take place" if Republicans take power. However, Bormuth does not say how these thinly described laws would affect him. More importantly, he does not allege that any such laws have been passed – only that he fears they will be passed. It is well-established that future legislation by an as-yet-unelected body is not "certainly impending." *See Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865

(6th Cir. 2020) ("When a plaintiff claims to have standing based on the threat of a future injury, it is not enough that the future injury is reasonably likely to occur—the 'threatened injury must be certainly impending.' " (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013))). As one court aptly put it, "we know of no case in which a plaintiff has successfully argued that he had standing because he was likely to be injured by legislation that had not yet been passed." *Am. Fed'n of Gov't Emps. v. United States*, 634 F. Supp. 336 (D.D.C. 1986) (citing cases), *aff'd sub nom. Bowsher v. Am. Fed'n of Gov't Emps., AFL-CIO*, 479 U.S. 801 (1986).

Bormuth also has not shown how his allegations of harm are fairly traceable to Consumers' actions or that they would be redressed by a judicial decision against Consumers. Bormuth has not alleged that Consumers gave money to CEME for the purpose of supporting these four legislators and their alleged Christian beliefs. Bormuth doesn't even respond to Consumers' arguments regarding traceability. At best, Bormuth alleges that CEME, not Consumers, supported and contributed to four candidates for the Michigan legislature, who may pass future legislation in Michigan that is allegedly harmful. Such an allegation is far too attenuated to support standing against Consumers. *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497 (6th Cir. 2023) (to satisfy traceability for standing to sue a defendant based on an injury caused by a third party, "a plaintiff must show that the defendant's actions had a 'determinative or

11

coercive effect' on the third party such that the actions of the third party can be said to have been caused by the defendant." (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997))).

Bormuth's third theory of standing is that Consumers' actions harm him "and all ratepayers who are not [C]hristian." (ECF No. 1, PageID.8). However, courts have held that a utility ratepayer, such as Bormuth, does not have federal standing to challenge how the utility uses its rate payments or its corporate profits. *See, e.g.*, *Ctr. for Biological Diversity v. Tenn. Valley Auth.*, No. 3:21-CV-319-TAV-DCP, 2022 WL 4137824, at *7-10 (E.D. Tenn. Sept. 12, 2022) (holding that ratepayer-plaintiffs did not suffer cognizable Article III injury from utility's use of rate payments to support outside groups engaging in activities with which plaintiffs disagree.); *cf. Walbridge Aldinger Co. v. City of Detroit*, 495 F. Supp. 2d 642, 644-5 (E.D. Mich. 2007) (analogizing so-called "ratepayer standing" to taxpayer standing and finding that retail ratepayers had no standing to challenge utility's contract award), *rev'd on other grounds*, 296 F. App'x 527 (6th Cir. 2008).

In his response, Bormuth says he has been injured because he has a "quality of life/aesthetic injury from the loss of the Monarch and Mourning Cloak Butterflies in Michigan due to Consumers Energy induced climate change." (ECF No. 11, PageID.85). This allegation does not establish a concrete and particularized injury. *See, e.g.*, *Protect Our Aquifer v. Tennessee Valley Auth.*, 654

F. Supp. 3d 654, 671 (W.D. Tenn. 2023) ("arguing that a person suffers aesthetic injury from Defendant exceeding its statutory authority through its contracts with LPCs, which finances a proposed pipeline, which may someday destroy the habitat of wildlife she would like to observe, impermissibly stretches Article III injury under *Lujan* and cases applying it.")

Bormuth's two other arguments about "ratepayer standing" also fail.  He first argues that he has standing under the Establishment Clause because he suffered "extreme emotional distress" from "offensive ads" that CEME aired.  The Establishment Clause has a narrow exception to the general rule against taxpayer standing only when expenditures are expressly authorized or mandated by *an act of Congress*.  *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 605-9 (2007).  No Congressional funding is at issue in this case.  Moreover, Bormuth has not alleged any facts showing that he had no choice but to come into regular contact with the ads, let alone that he will continue to come into contact with them in the future.

Overall, Bormuth has not established standing under any of his theories.  The complaint is therefore subject to dismissal under Rule 12(b)(1).

### B.    Failure to State a Claim

Even assuming Bormuth has standing to bring the claims asserted against Consumers, Consumers alternatively argues that none of the claims raise proper or

plausible claims for relief.  For the sake of completeness, each claim is addressed in turn below.

### 1.     Treason

Treason is a criminal offense, which does not cause a private injury or violate individual rights.  *Cassaday v. Trump*, No. 22-cv-682, 2022 WL 3082464, at *4 (W.D. Mich. Aug. 3, 2022) (citing cases); *see also Arunachalam v. Apple, Inc.*, 806 F. App'x 977, 981 (Fed. Cir. 2020) (affirming dismissal of treason claims for lack of standing) (citing cases).  Courts do not permit a private cause of action for violation of criminal statutes.  *See Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002) (generally no private right of action for alleged violations of criminal statutes).

Treason under federal law consists of "levying War" against the United States, "adhering" to the United States' enemies, or giving the United States' enemies "Aid and Comfort."  U.S. Const. art III, § 3, cl. 1.  Courts have consistently held that there is no private cause of action for treason.  *See, e.g.*, *Zimmerman v. Facebook, Inc.*, No. 19-cv-04591, 2020 WL 5877863, at *2 (N.D. Cal. Oct. 2, 2020); *Manosh v. Guards State Off. Bldg.*, No. 6:18-cv-717, 2018 WL 3062584, at *3 (N.D.N.Y. June 21, 2018) ("Although there are criminal statutes prohibiting Treason, there is no private right of action for Treason under the law.") (citing cases).  "This means that a private individual may not bring an action

against a defendant based on a claim that the defendant committed treason." *Id.*; *see also Irving v. Lorson*, No. C-2-02-823, 2002 WL 31844685, at *3 (S.D. Ohio Dec. 12, 2002).

Bormuth's citation to the Treaty of Tripoli does not save this claim. Bormuth says that the Treaty of Tripoli of 1797 articulates the principle that "the Government of the United States of America is not, in any sense, founded on the Christian religion." (ECF No. 1, PageID.3). However, the Treaty of Tripoli terminated in 1912 when the United States recognized Italian sovereignty over Libya. *El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 558 n.10 (D.N.J. 2011) (citing Treaty of Peace and Amity Between the United States of America and the Bashaw, Bey and Subjects of Tripoli in Barbary, June 4, 1805, 11 Bevans 1081, 1805 U.S.T. LEXIS 1). In addition, Bormuth fails to show that the treaty grants him a private right of action. " 'As a general rule, . . . international treaties do not create rights that are privately enforceable in the federal courts.' " *MacLeod v. Moritz*, No. 19-1887, 2020 WL 4590115, at *2 (6th Cir. Apr. 15, 2020) (quoting *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001)). " ' Absent express language in a treaty providing for particular judicial remedies, the federal courts will not vindicate private rights unless a treaty creates fundamental rights on a par with those protected by the Constitution.' " *MacLeod*, at *2 (quoting *Emuegbunam*, 268 F.3d at 390).

15

Bormuth cites Circuit Justice Stephen Field's decision in *U.S. v. Greathouse*, 26 F. Cas. 18 (C.C.N.D. Cal. 1863).  In *Greathouse*, the court explained that although domestic rebels may commit treason by "levying war" against the U.S., they cannot commit treason under the "Aid and Comfort" clause.  Hence, Bormuth's treason claim based on Consumers allegedly supplying "aid and comfort" to others is not actionable.

Finally, Bormuth's suggestion that the Court appoint a special prosecutor to investigate his claim of treason is unsupported.  Bormuth provides no authority to support this course of action within the confines of this lawsuit nor is the undersigned aware of any.

Overall, Count I (Treason) fails to state a viable claim for relief and should therefore be dismissed.

### 2. Section 1983 Equal Protection Claim

Consumers argues that this claim should be dismissed because Bormuth has not plausibly pled that Consumers is a state actor subject to liability.  The undersigned agrees.

To state a claim under 42 U.S.C. § 1983, Bormuth must plead and prove that a right secured by the Constitution or a federal law has been violated and that the violation was caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023).

16

Typically, liability under § 1983 lies only if the defendant is a government entity.
*Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978) ("[M]ost rights secured by the
Constitution are protected only against infringement by governments.").  In order
to bring a claim against a private actor under § 1983, Bormuth must allege that
Consumers was a state actor for purposes of § 1983.  To do so, Bormuth must
show that Consumer's actions "so approximate state action that they may be fairly
attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir.
2000).

Courts have used three tests to determine whether a private actor's conduct
amounts to state action: "(1) the public-function test, (2) the state compulsion test,
and (3) the symbiotic relationship or nexus test." *Boykin v. Van Buren Twp.*, 479
F.3d 444, 451 (6th Cir. 2007) (internal quotation marks and citation omitted).
Bormuth has the burden of alleging state action.  *See Nugent v. Spectrum Juv. Just.
Servs.*, 72 F.4th 135, 141 (6th Cir. 2023); *Jojola v. Chavez*, 55 F.3d 488, 494 (10th
Cir. 1995).

Under the public function test, the private actor must exercise powers which
are traditionally reserved exclusively to the state. *Wolotsky v. Huhn*, 960 F.2d
1331, 1335 (6th Cir. 1992).  Courts have held that "very few functions fall into that
category." *Manhattan Cmty. Access Corp. v. Halleck*, ––– U.S. –––, 139 S. Ct.
1921, 1929 (internal quotation marks and citation omitted).  The few that do, such

17

as holding elections (*Terry v. Adams*, 345 U.S. 461 (1953)), running a company town (*Marsh v. Alabama*, 326 U.S. 501 (1946)), and providing healthcare for incarcerated people (*West v. Atkins*, 487 U.S. 42 (1988)), bear little similarity to this case.  Bormuth's allegation that Consumers made financial contributions to an organization that promotes candidates with values antithetical to his own is not an act traditionally reserved to the state.

Moreover, although Consumers provides utility services to its customers, which could be considered a public function, the Supreme Court has held that the furnishing of utility services is not a state function.  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974).  Courts have applied Jackson to hold that utility companies are not subject to liability under § 1983 because they are not state actors.  *See, e.g.*, *Kelmendi v. Pacito*, No. 17-12325, 2018 WL 3956366, at *5 (E.D. Mich. Aug. 17, 2018) (holding that DTE, a public electric utility, was not a state actor subject to claims under § 1983 even for its provision of public utility services); *Constant v. DTE Elec. Co.*, No. 19-10339, 2020 WL 2836324, at *3 (E.D. Mich. May 31, 2020) (same).

The state-compulsion test "requires that the state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."  *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) ( internal quotations marks and

citation omitted).  Here, Bormuth has not alleged any facts indicating that Consumers was somehow coerced or significantly encouraged by the state into making the alleged improper financial contributions.

Under the nexus test, there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  Bormuth has not alleged that the state is "intimately involved" in Consumer's alleged contribution activities such that Consumers' actions must be attributed to the state itself.  *Id.*

Bormuth seems to suggest that Consumers is a state actor for purposes of an Establishment Clause violation, but he cites no authority for this proposition.  And courts have used the tests outlined above in assessing whether an entity is a state actor for purposes of an Establishment Clause violation.  *See Cooper v. USPS*, 577 F.3d 479, 491-3 (2d. Cir. 2009).

Overall, because Consumers is not a state actor under any test, Bormuth cannot bring a claim under § 1983 against it.  In other words, Consumers could not have violated Bormuth's constitutional rights by any of its alleged actions.  *See Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 n.4 (6th Cir. 2022) (noting that a defendant whose acts do not constitute state action cannot violate the First or Fourteenth Amendment).  Count II should therefore be dismissed.

19

3.      Section 1985 Conspiracy Claim

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),

Bormuth must establish the following four elements: (1) a conspiracy involving

two or more persons (2) for the purpose of depriving, directly or indirectly, a

person or class of persons of the equal protection of the laws and (3) an act in

furtherance of the conspiracy (4) which causes injury to a person or property, or a

deprivation of any right or privilege of a citizen of the United States.  *See Collyer*

*v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (*citing Johnson v. Hills & Dales Gen.*

*Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078

(6th Cir. 1998).  Moreover, he must allege that there existed "some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action."  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also*

*Collyer*, 98 F.3d at 233.

Here, Bormuth alleges that Consumers has engaged in a conspiracy under §

1985(3) "by giving dark money donations to [] candidates [who support

"[C]hristian nationalist" positions] and conspiring with them for the purpose [of]

hindering the constituted authorities of Michigan from giving or securing to all

non-[C]hristian persons within our State the equal protection of the laws."  (ECF

No. 1, PageID.17-18).  He further alleges that

> non-[C]hristians will be denied equal rights . . . such as banning women
> from medical services such as abortion and contraception; transferring

20

> state monies to charter schools for religious education; putting religious instruction or chaplains in public schools; banning LGBT people from medical services or from serving in legislatures; prohibiting state agencies from using climate change in decision making.

(*Id.*, PageID.18).  In his response to Consumers' motion, Bormuth redefines his conspiracy claim by arguing that Consumers conspired to violate the Establishment Clause rights of Pagans.  (ECF No. 11, PageID.97-99).  Neither theory states a plausible claim.

Bormuth's allegations are wholly conclusory.  There are no facts alleged that there is any agreement between Consumers and the four Michigan "[C]hristian nationalist" legislators.  There are no allegations that any actions were taken by Consumers and the legislators together to violate the rights of anyone, including Pagans.  The complaint is simply devoid of facts that would suggest that Consumers acted jointly for the purpose of depriving Bormuth or anyone else of equal protection or even that Consumer's alleged actions were motivated by Bormuth's membership in a distinct class.  Bormuth's § 1985 conspiracy claim under Count III should therefore be dismissed.

## V.    Conclusion

The undersigned does not doubt the sincerity of Bormuth's beliefs.  However sincere, none of his beliefs which form the allegations in the complaint translate to cognizable claims against Consumers.

For the reasons explained in detail above, the undersigned RECOMMENDS

that Consumers' motion to dismiss, (ECF No. 9), be GRANTED, and the case be

DISMISSED.

Dated: December 12, 2023            s/Kimberly G. Altman
Detroit, Michigan                   KIMBERLY G. ALTMAN
                                    United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 12, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager